458 S.E.2d 595

**Kimberly Rose O'TOOLE**

v.

**COMMONWEALTH of Virginia.**

**Record No. 2347–93–1.**

Court of Appeals of Virginia,
Norfolk.

June 27, 1995.

Benton, J., filed dissenting opinion.

Andrew G. Wiggin (Office of the Public Defender, on brief), for appellant.

Grace DiLiberto, Asst. Atty. Gen. (James S. Gilmore, III, Atty. Gen., on brief), for appellee.

Present: BAKER, BENTON, JJ., and HODGES, Senior Judge.

BAKER, Judge.

Kimberly Rose O'Toole (appellant) appeals from her bench trial conviction by the Circuit Court of the City of Virginia Beach (trial court) for possession of cocaine. The sole issue presented by this appeal is whether the trial court erred when it denied appellant's motion to suppress the evidence of the cocaine found in her possession at the time of her arrest. Finding no error, we affirm the conviction.

 In an appeal of a trial court's ruling on a suppression issue, we view the evidence in the light most favorable to the prevailing party below. *Miller v. Commonwealth,* 16 Va.App.

977, 979, 434 S.E.2d 897, 899 (1993). We will not disturb a trial court's refusal to suppress evidence seized in a warrantless search unless the holding is plainly wrong or unsupported by the evidence. *Commonwealth v. Grimstead,* 12 Va.App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

A reliable informant, whose prior tips had resulted in arrests and convictions of persons for unlawful cocaine transactions, telephoned Special Investigations Unit Virginia Beach Detective John Tosloskie (Tosloskie) and told him that the informant had been in appellant's apartment and was told by an unnamed occupant of that apartment that appellant was "making the rounds" delivering cocaine from a Bronco truck, bearing Virginia license plate number "CHUXX." In the past, the informant had provided Tosloskie with tips that resulted in arrests and convictions. Some of these tips were based not upon the informant's personal knowledge but upon information that the informant had received from others. The informant also advised Tosloskie that appellant would be accompanied by a black male known as "Junie" who was 5'5" tall and weighed 150 pounds. Tosloskie knew "Junie" as Thomas Lee White (Junie) through having previously arrested him for possessing a firearm after having been convicted of a felony.

Approximately 30 to 40 minutes after Tosloskie received this information from the informant, he saw the Bronco truck with the license plates "CHUXX." Tosloskie stopped the truck, which was occupied by appellant, Junie, and Hattie Beale. Junie was arrested for driving without a driver's license, and a search of his person incident to that arrest produced a small quantity of marijuana. Tosloskie told appellant that he suspected she was in possession of cocaine. He asked her to step out of the truck and asked her permission to search her person for drugs. She consented, and crack cocaine was found in a plastic Ziploc baggie tucked into the waistband of her pants. She was also in possession of drug paraphernalia and additional quantities of cocaine.

Prior to making the stop, Tosloskie had confirmed that appellant was in the area indicated by the informant and

traveling in a Bronco bearing license number "CHUXX," accompanied by a person (Junie) meeting the description given by the informant, and bearing a name known by Tosloskie as someone he previously had arrested. Thus, prior to the stop, Tosloskie had confirmed a substantial part of the information given by the informant that had been received from an unnamed person. The suspect was traveling in a motor vehicle and there was no time to procure a warrant.

> The [United States] Supreme Court has held that when a police officer verifies innocent facts which have been furnished by an anonymous informer, verification is a factor that may be considered in determining whether the officer had reasonable suspicion to warrant a temporary stop and inquiry of the suspect.

*Boyd v. Commonwealth,* 12 Va.App. 179, 189, 402 S.E.2d 914, 920 (1991).

Evidence in the record supports the following finding made by the trial court:

> [W]e got information coming from an unknown person that is verified to a certain extent. This unknown person tells the police that someone is holding drugs, and they are riding in a certain type of vehicle with a certain license plate and with a certain individual. Police verify that there is a vehicle on the road that fits the description with that license plate and it does have this Junie in it, so they have verified three of the things that have been said by this unknown person.

Tosloskie also testified that, in the past, the informant had given Tosloskie information that had been given to the informant by an anonymous person, which had led to arrests and convictions of persons unlawfully engaged in drug transactions. For that reason, Tosloskie had reason to believe the informant's tip in this case would prove reliable. It is clear that the informants, known and anonymous, provided Tosloskie with predictive information that he was able to corroborate.

In a case bearing remarkable similarity to the one before us, United States Supreme Court Justice White said:

When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop.

Although it is a close case, we conclude that under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of respondent's car.

*Alabama v. White*, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990).

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*

BENTON, Judge, dissenting.

Only if an anonymous "tip" contains sufficient quality and quantity of detail to overcome the inherent unreliability that flows from the anonymity of its source does the "tip" rise to the level of reasonable, articulable suspicion, the standard required to conduct a *Terry* stop. *Beckner v. Commonwealth*, 15 Va.App. 533, 536–37, 425 S.E.2d 530, 532–33 (1993). When, as in this case, an informant relays to the police information from another unidentified person, the source of the "tip" is anonymous and has no inherent reliability. " 'It simply "makes no sense to require some indicia of reliability that the informant is *personally* reliable but nothing at all concerning the *source* of his information." ' " *Id.* at 533, 536–37, 425 S.E.2d at 532.

"An important element in establishing the reliability of an anonymous tip is the predictive nature of the information." *Hardy v. Commonwealth*, 11 Va.App. 433, 435, 399 S.E.2d 27, 28 (1990). The Supreme Court of the United States, in "a close case," *Alabama v. White*, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990), concluded as follows:

[T]he independent corroboration by the police of *significant aspects of the informer's predictions* imparted some degree of reliability to the other allegations made by the caller.

[It is] also important that, as in [*Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)], "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to *future actions* of third parties ordinarily not easily predicted."

*Id.* (emphasis added) (citations omitted).

The "tip" that the police received regarding O'Toole was not of a quality that would have imparted an intrinsic belief that the anonymous source was operating upon a basis of knowledge and not a hunch. Nothing contained in the tip allowed the trial judge to conclude that the anonymous source had "inside information [or] a special familiarity" with O'Toole's activities or affairs. *Id.* The fact that the police saw a vehicle that matched the description given by the anonymous source means only that the police verified "easily obtained facts and conditions existing at the time of the tip." *Id.* Indeed, anyone who had seen O'Toole "could have 'predicted' [those] fact[s] because [they were] a condition presumably existing at the time of the call." *Id.* Moreover, the mere fact that O'Toole was in the vehicle did not verify the uncorroborated statement that O'Toole was making rounds to deliver cocaine. *See Hardy,* 11 Va.App. at 435, 399 S.E.2d at 28 (seeing a person is not verification that a person is carrying an object). *See also Carter v. Commonwealth,* 9 Va.App. 310, 387 S.E.2d 505 (1990).

In *White,* the police were told the current location of the suspect, the time of the suspect's intended departure, the vehicle the suspect intended to use, the suspect's intended destination, and the description of the valise in which the suspect would be carrying cocaine. 496 U.S. at 327, 110 S.Ct. at 2414–15. In this case, the anonymous tipster gave neither a time nor a specific destination for O'Toole's activities. The "tip" only indicated that she would be "making the rounds."

Thus, the critical deficiency in this case, and the significant factor which distinguishes this case from *White,* is the lack of facts predicting future behavior which would indicate "a special familiarity" with O'Toole's affairs. *Id.* at 332, 110 S.Ct. at 2417. *See also State v. Bullington,* 165 Ariz. 11, 795 P.2d 1294, 1297 (Ct.App.1990); *Brown v. U.S.,* 590 A.2d 1008, 1023–24 (D.C.1991); *Commonwealth v. Lyons,* 409 Mass. 16, 564 N.E.2d 390, 393 (1990); *State v. Bedolla,* 111 N.M. 448, 806 P.2d 588, 592 (Ct.App.), *cert. denied,* 111 N.M. 416, 806 P.2d 65 (1991).

The facts relied upon when the police made the stop were not qualitatively more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).

> If a hunch is not enough for a police officer to effectuate a stop, it follows that the hunch of an unnamed informant, albeit an informant with some indicia of personal reliability, is also not sufficient. The fact that the informant's hunch is conveyed to the police officer does not raise the hunch to the level of reasonable suspicion. "Manifestly, this conduct falls below activity necessary to justify a reasonable suspicion that a violation of law had occurred or was occurring."

*Beckner,* 15 Va.App. at 537, 425 S.E.2d at 533 (quoting *Zimmerman v. Commonwealth,* 234 Va. 609, 612, 363 S.E.2d 708, 710 (1988)).

Because the tip "falls short of providing the 'minimal level of objective justification'" required to conduct a *Terry* stop, *Brown,* 590 A.2d at 1023, I would hold that the trial judge erred in refusing to suppress the evidence. I dissent.